FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2018

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

MOASHEENA JENEE LUCAS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:17-CV-00136-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 13. Ms. Lucas brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Lucas' Motion for Summary Judgment.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

## I.    Jurisdiction

Ms. Lucas filed her application for Supplemental Security Income on May 3, 2012. AR 203-08. Her alleged onset date in her application is June 1, 2009. AR 203. Ms. Lucas' application was initially denied on September 19, 2012, AR 150-58, and on reconsideration on July 30, 2013, AR 162-67. A hearing with Administrative Law Judge ("ALJ") R.J. Payne occurred on August 27, 2015. AR 36-111. On September 25, 2015, the ALJ issued a decision finding Ms. Lucas ineligible for disability benefits. AR 11-25. The Appeals Council denied her request for review on February 17, 2017, AR 1-5, making the ALJ's decision the final decision of the Commissioner. Ms. Lucas filed her Complaint in District Court on April 11 2017, pursuant to 42 U.S.C. § 405(g). ECF No. 3.

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Ms. Lucas was 35 years old at the time of filing. AR 203. Ms. Lucas has a combination of physical and mental impairments. AR 13. She has previously worked as a teacher's aide, bus attendant, and housekeeper. AR 24.

## V. The ALJ's Findings

The ALJ determined that Ms. Lucas was not under a disability within the meaning of the Act since March 12, 2012, the date her application was filed. AR 11-25.

**At step one**, the ALJ found that Ms. Lucas had not engaged in substantial gainful activity since March 12, 2012 (citing 20 C.F.R. § 416.971 et seq.). AR 13.

**At step two**, the ALJ found Ms. Lucas had the following severe impairments: Sjogren's syndrome; diabetes mellitus; non-epileptic seizure disorder; history of asthma; gastroesophageal reflux disease; obesity; learning disorders; mood disorder, not otherwise specified, versus depressive disorder, not otherwise specified; anxiety, not otherwise specified; and posttraumatic stress disorder with associated episodes of stuttering and tremors (citing 20 C.F.R. § 416.920(c)). AR 13.

At **step three**, the ALJ found that Ms. Lucas did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 13-16.

**At step four**, the ALJ found Ms. Lucas had the residual functional capacity to perform light work with these limitations: she can sit, stand, and walk six hours each with normal breaks in an eight hour workday; she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can engaged in frequent stooping, occasional crouching, occasional kneeling, occasional crawling, frequent balancing, and occasional climbing of ramps or stairs; she is unable to climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to pulmonary irritants, marked temperature extremes such as heat and cold, and unprotected heights; she should avoid concentrated exposure to hazardous machinery; she can frequently handle, finger, and feel; she can understand, remember, and carry out

simple, routine, and repetitive work instructions and work tasks where she is shown what to do versus receiving verbal instructions; she can handle superficial or occasional contact with the general public; she can handle routine supervision, as opposed to heavy-handed or over-the-shoulder type supervision; and she is unable to perform any job requiring independent judgment. AR 16.

The ALJ determined that Ms. Lucas is capable of performing past relevant work as a teacher aide and bus attendant. AR 24. She cannot perform her past relevant work as a housekeeper. *Id.*

In the alternative, **at step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines and testimony of a vocational expert, there are jobs that exist in significant numbers in the national economy that Ms. Lucas can perform. AR 24-25. These include: office cleaner, small parts assembler, and electrical assembler. AR 25.

## VI.    Issues for Review

Ms. Lucas argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly rejecting the opinions of Ms. Lucas' medical providers; (2) improperly rejecting Ms. Lucas' subjective complaints; (3) failing to conduct an adequate step four analysis; and (4) in the alternative step five finding, failing to

meet the burden to identify specific jobs available in significant numbers which Ms. Lucas could perform in light of her specific functional limitations. ECF No. 12 at 6.

## VII.   Discussion

### A. The ALJ properly weighed the medical opinion evidence.

#### a.  Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Clark Ashworth, Ph.D. and Dr. Myrna Palasi, M.D.

Dr. Ashworth performed a psychological evaluation on November 8, 2013, for the Washington Department of Social and Health Services ("DSHS"). AR 1256-59. Dr. Ashworth noted moderate limitations in several functional areas. AR 1257-58.

Dr. Palasi performed a review of medical evidence for DSHS on December 17, 2013, in which she reviewed the records of Dr. Ashworth and Liz Swift, ARNP. AR 1285. Dr. Palasi stated the impairments found in the record and that the limitations were consistent with the medical evidence, but provided no further explanation. *Id.* The form was short and in check-box format. *Id.*

The ALJ gave little weight to both of these opinions for multiple reasons. First, the ALJ stated that they were based substantially on self-reported symptoms and were unsupported by objective medical findings or the record as a whole. AR

22. This is a valid reason. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (ALJ may discount a doctor's opinion that is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible). As the ALJ did not err in assessing Ms. Lucas' credibility, there is no error. *See infra* at pp. 14-18.

Dr. Palasi did refer to some objective medical evidence in her short opinion. Specifically, she referred to Ms. Lucas' inability to heel walk, popping knees, and discomfort squatting and standing, recorded by Elizabeth Swift, ARNP, in November 2013. AR 1267, 1285. However, Dr. Palasi had a very small portion of the record, and her physical findings are predicated on Ms. Swift's records, which the ALJ also gave little weight, specifically because the "conclusion is not supported by the largely benign and mild findings documented in her notes in the record as a whole." AR 23. Dr. Palasi had no personal objective findings, as she did not evaluate Ms. Lucas herself. Thus, Dr. Palasi could only provide a basic check box form that was not supported by objective evidence, and it was not improper for the ALJ to devalue this opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (minimal weight is appropriate for unsupported, unexplained check boxes especially when there is no existing treatment relationship).

1        Likewise, Dr. Ashworth presents very limited objective findings. He states

2   that Ms. Lucas "presents in a manner suggesting intellectual deficits," but he

3   acknowledges the lack of IQ testing to support this. AR 1257. Even his mental

4   status examination suggests heavy reliance on subjective statements, referring to

5   her affect with "self-described mood." AR 1259. What is based on observation is

6   largely benign and does not support the level of impairment asserted. *See Bayliss v.*

7   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ need not accept medical

8   opinions that are unsupported by objective medical evidence, such as clinical

9   notes). This reliance on self-reporting is particularly relevant as Dr. Ashworth

10  found that Ms. Lucas' MMPI testing results were unreliable. AR 1259.

11       Dr. Ashworth also opines numerous moderate limitations in check box form,

12  but the findings are not supported by objective findings.  The ALJ was permitted to

13  give these limitations minimal weight. *See Garrison*, 759 F.3d at 1013.

14       The ALJ explained also that the evaluations for DSHS are performed for a

15  different purpose and claimants have an incentive to overstate their limitations

16  because their state benefits rest on the evaluations. AR 22-23. This alone would be

17  an insufficient reason for rejecting a medical opinion. *See Reddick v. Chater*, 157

18  F.3d 715, 726 (9th Cir. 1998) ("[I]n the absence of other evidence to undermine the

19  credibility of a medical report, the purpose for which the report was obtained does

20  not provide a legitimate basis for rejecting it.") However, because the ALJ

provided other, valid reasons for assigning the opinions of Drs. Ashworth and Palasi, this error is harmless.

### c. Elizabeth Swift, ARNP

Ms. Swift is not an "acceptable medical source" and therefore is viewed as an "other source." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ gave Ms. Swift's opinions from October and November 2013 little weight. AR 23, 992-93, 1266-68. The ALJ noted first that the range of treatment was very narrow, from July 2012 through October 2013. AR 23. As the ALJ need only provide a germane reason, and length of treatment time is a relevant factor to consider, the Court finds this acceptable. *See* 20 C.F.R. 404.1513. More importantly, however, the ALJ noted that Ms. Swift's opinion that Ms. Lucas would miss four or more days per month due to her impairments is unsupported by

the record. *Id.* This is one example of the general finding that Ms. Swift's opinions conflict with the overall record, AR 23, and this serves as a germane reason for devaluing the opinion. *Lewis v. Apfel*, 236 F. 503, 511 (9th Cir.2001).

**B. The ALJ properly rejected Ms. Lucas' subjective complaints.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the

Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically

determinable impairments could reasonably be expected to produce the symptoms

Ms. Lucas alleges; however, the ALJ determined that Ms. Lucas' statements

regarding intensity, persistence, and limiting effects of the symptoms were not

entirely credible. AR 18.

The ALJ evaluated Ms. Lucas' credibility by each impairment. AR 18-22.

ALJ Payne began with Sjogren's syndrome. AR 18. First, impartial medical expert

Dr. Judy Panek, M.D., testified at the hearing that Ms. Lucas' Sjogren's syndrome

is stable with medication, AR 43, which contradicts disabling limitations from the

condition. Additionally, the ALJ noted that Ms. Lucas did not seek or receive

treatment for her Sjogren's syndrome beyond regular medication refills. AR 18.

Unexplained or inadequately explained failure to seek treatment "can cast doubt on

the sincerity" on subjective testimony. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

1989).

Next the ALJ looked at the alleged limitations resulting from Ms. Lucas'

diabetes mellitus. AR 18-19. The record demonstrates that when properly adhering

to her medication, Ms. Lucas' diabetes mellitus is also stable. AR 665, 682, 1131,

1158. There is even evidence in the record that during a lapse in medication, she

was not experiencing difficulty, AR 1142, which further contradicts Ms. Lucas' subjective allegations of disabling symptoms resulting from diabetes mellitus.

The ALJ next reviewed allegations related to Ms. Lucas' non-epileptic seizure disorder. AR 19. The ALJ pointed to normal brain scans that do not support a true seizure disorder. AR 668. The record supports the ALJ's finding that Ms. Lucas' shaking is actually the result of anxiety and/or stress and not a true seizure disorder, such as epilepsy. AR 60-61, 698, 703, 722, 724-25, 990, 1124. The ALJ thus did not account for epilepsy in Ms. Lucas' residual functional capacity, but she did account for Ms. Lucas' mental impairments. Moreover, the ALJ pointed to the testimony of impartial psychological expert Dr. Margaret Moore, Ph.D., who stated that Ms. Lucas' shaking was reduced with medication. AR 61. Ms. Lucas also testified that her tremors are more frequent if she does not take her medication. AR 85. The record overall supports the ALJ's conclusion that Ms. Lucas' subjective symptom testimony regarding her tremors are less severe than alleged.

Likewise, the record demonstrates conservative treatment for Ms. Lucas' asthma and gastroesophageal reflux disease. Conservative treatment may be evidence used to discount a claimant's credibility regarding severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Ms. Lucas has received medication for both, and the record does not indicate significant treatment

beyond these medications. For example, despite having an endoscopy in January 2014, Ms. Lucas was merely advised to stay on her medication regimen. AR 1107. Further, the ALJ did account for her asthma by including a limitation on exposure to pulmonary irritants. AR 16.

Finally, the ALJ found that Ms. Lucas' self-reported mental impairments were not as severe as suggested by the record. AR 20-21. The ALJ referred to the mental status examination performed by Dr. Renee Thompson, Psy.D., on September 11, 2012, which found Ms. Lucas to be "cooperative, polite, and responsive," and while Ms. Lucas admitted to recently having suicidal thoughts, she denied in consideration of means or plan for self-harm. AR 988. She was also described as being well oriented to person, place, and time. *Id.* And despite allegations of significant impairment with concentration, Dr. Thompson found Ms. Lucas' trend of thought to be unremarkable. *Id.* Moreover, Dr. Thompson specifically found that Ms. Lucas was capable of understanding, remembering, and carrying out simple work related instructions, AR 991, a limitation the ALJ included in her residual functional capacity, AR 16.

The ALJ referred also to the notes throughout the longitudinal record that contradict Ms. Lucas' subjective symptom testimony. This includes a lack of emergency room or outpatient treatment for her psychological conditions, which indicate more conservative treatment. *See Parra*, 481 F.3d at 750-51. Additionally,

the record indicates Ms. Lucas is independent in her self-care and activities of daily living. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In sum, the Court does not find the ALJ erred when assessing Ms. Lucas' credibility because her allegations of complete disability are inconsistent with the record and medical evidence, and Ms. Lucas' activities reflect a level of functioning that is inconsistent with her claims of total disability.

**C. The ALJ did not err at steps four and five.**

Ms. Lucas argues that the ALJ erred at step four because ALJ Payne did not include all of Ms. Lucas' functional limitations. ECF No. 12 at 17. This is an attempt to reargue the errors in weighing medical evidence and determining Ms. Lucas' credibility. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Ms. Lucas also states that the ALJ failed to properly determine whether she could complete her past relevant work. ECF No. 12 at 17. As required, the ALJ made the finding that Ms. Lucas could perform her past relevant work generally as actually performed. AR 24. Contrary to Ms. Lucas' assertion, it was not in error to seek the assistance of a vocational expert at this phase as long as the ALJ makes findings. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

Moreover, even if the ALJ did err with regard to the findings that Ms. Lucas could perform her past relevant work, the ALJ made alternative findings at step five that are valid. Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work available in significant numbers in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012). If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ properly framed the hypothetical question addressed to the vocational expert, based on the residual functional capacity. In response, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of Ms. Lucas given her limitations. The vocational expert did her job of translating "factual scenarios into realistic job market probabilities." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (internal quotations omitted). Thus, the Court finds the ALJ did not err at step five.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12,** is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

///

///

///

///

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

Order, forward copies to counsel and **close the file**.

**DATED** this 14th day of March, 2018.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge